# EXHIBIT 1

Columbia Casualty Company v. State Auto Mutual Insurance Company



*1 Towne Square, Suite 1075, Southfield, MI  48076*

November 30, 2016

Stephen J. Federer
HYLANT GROUP, INC.
565 METRO PLACE S #450
DUBLIN, OH 43017

Re:    State Automobile Mutual Insurance Co
       E & O Solutions
       Policy Number 425252346
       Expiration Date: 12/01/2017

Dear Mr. Federer,

We are pleased to enclose Policy Number 425252346 for State Automobile Mutual Insurance Co. We trust that this policy meets with the specifications outlined in our quotation (number 6158710001). Please review it carefully to confirm this. Should you detect any problem, please contact me as soon as possible.

If commissions or other compensation are payable hereunder, Insurance Producer will comply with all applicable federal and state laws, rules, regulations and/or orders governing disclosure by an agent, broker or producer to an insured or prospective insured of commissions or other compensation.

We appreciate the opportunity to do business with State Automobile Mutual Insurance Co and with you.  If you should have any comments, questions, or concerns, please do not hesitate to contact me.

Sincerely,

Kevin Smith
Underwriting Consulting Director
Phone  :(248) 350-6132
Fax      :(248) 350-6110
Kevin.Smith@cna.com



**INSURANCE COMPANY E&O SOLUTIONS**

**NOTICE:**

THIS POLICY APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD. CLAIMS MUST BE REPORTED TO THE COMPANY IN ACCORDANCE WITH SECTION VI. DEFENSE COSTS ARE WTHIN THE LIMITS OF LIABIITY.

PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

| COMPANY AND ADDRESS | PRODUCER |
|---|---|
| Item 1.  State Automobile Mutual Insurance Co<br>518 E Broad Street<br>Columbus, OH  43215 | HYLANT GROUP, INC.<br>Stephen J. Federer<br>565 METRO PLACE S #450<br>DUBLIN, OH  43017 |
| Attn.: | |

| CUSTOMER NUMBER | INSURER |
|---|---|
| 236427 | Columbia Casualty Company |
| **POLICY NUMBER** | 333 S. Wabash Ave. |
| 425252346 | Chicago, IL<br>60604 |

Item 2.  **Policy Period**:          12/1/2016 to 12/1/2017
                                           12:01 a.m. standard time at the address stated in Item 1.

Item 3.  **Policy Premium**:        $350,000

Item 4.  **Notices to Insurer**:
            CNA – Claims Reporting
            P.O. Box 8317
            Chicago, IL 60680-8317
            Fax Number: 866-773-7504
            Email address: SpecialtyNewLoss@cna.com

Item 5.  **Extended Reporting Period**:

            a.     Period:              365 Days
            b.     Premium:           100% of Policy Premium

Item 6.  **Limit of Liability** (Inclusive of **Defense Costs**):

            $5,000,000 aggregate limit of liability

            Coinsurance 0%

Item 7.  **Retentions**:

            Retention applicable to Each **Claim -** $3,000,000

Item 8.  **Prior or Pending Date**: 11/15/2002

Item 9.  **Endorsements forming a part of this Policy at issuance**:
            G-145125-A       08/2003      OFAC Renewal Policyholder Notice
            G-145184-A       06/2003      Economic & Trade Sanctions Conditions

GSL2434c (Ed. 9 -07)
© CNA  All Rights Reserved.



**INSURANCE COMPANY E&O SOLUTIONS**

| | | |
|---|---|---|
| GSL-11075-XX | 07/2008 | AMENDMENT THRESHOLD COVERAGE FOR NEW SUBSIDIARIES AND PLANS |
| GSL-11076-XX | 07/2008 | ENDORSEMENT (VARIABLE) |
| GSL-11078-XX | 07/2008 | BILATERAL EXTENDED REPORTING PERIOD |
| GSL-11079-XX | 07/2008 | AMEND DEFINITION OF CLAIM TO INCLUDE NON-MONETARY RELIEF ENDORSEMENT |
| GSL-11690-XX | 12/2008 | EMPLOYED LAWYERS ENDORSEMENT |
| GSL-11694-XX | 12/2008 | State Auto Mutual Insurance Company Additional Insured Endorsement |
| GSL-11699-XX | 12/2008 | Additional Insured Exclusion Endorsement |
| GSL-11700-XX | 12/2008 | Amend Application Section (Only CEO, CFO And General Counsel Can Impute Knowledge To Entity) |
| GSL-12315-XX | 03/2009 | Amend Deliberate Acts Exclusion Amend Final Adjudication And Severability |
| GSL-11701-XXC | 12/2008 | Amend Definition of Application |
| CNA-78049-XX | 02/2014 | State Mutual Auto Insurance Company Semiannual Bordereau Claims Reporting Endorsement |
| CNA-74300-XX | 06/2014 | State Automobile Mutual Insurance Co. Retention Amendatory Endorsement |
| | | Service of Suit |

Authorized Representative:_____

GSL2434c (Ed. 9 -07)

© CNA  All Rights Reserved.



**INSURANCE COMPANY E&O SOLUTIONS**

**THIS POLICY APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD. CLAIMS MUST BE REPORTED TO THE COMPANY IN ACCORDANCE WITH SECTION VI. DEFENSE COSTS ARE WTHIN THE LIMITS OF LIABIITY.**

**PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

**Terms in bold face type have special meaning. See the definitions sections of this Policy.**

The Insurer and the **Insureds** agree as follows, in consideration of the payment of the premium and in reliance upon all statements made in the **Application** furnished to the Insurer designated in the Declarations, a stock insurance corporation, hereafter called the "Insurer."

## I.    INSURING AGREEMENTS

The Insurer shall pay on behalf of the **Insureds** that **Loss** resulting from any **Claim** if such **Claim** is first made against the **Insureds** during the **Policy Period** or the Extended Reporting Period , if applicable, for a **Wrongful Act** in the rendering or failing to render **Professional Services**.

## II.    DEFINITIONS

**Application** means all signed applications, any attachments to such applications, other materials submitted therewith or incorporated therein, and any other documents submitted in connection with the underwriting of this Policy by the Insurer.

**Claim** means:
1.      a written demand for monetary damages;
2.      a civil proceeding in a court of law or equity or arbitration; or
3.       a formal administrative or regulatory proceeding,
against an **Insured**,  including any appeal therefrom.

**Client** means any person or entity, other than an **Insured** or affillate of any **Insured Entity,** for whom or for which **Professional Services** are rendered**.**

**Defense Costs** means reasonable and necessary fees costs and expenses, consented to by the Insurer (such consent not to be unreasonably withheld) and incurred by the **Insureds** in the investigation, adjustment, defense or appeal of any covered **Claim**, and includes premium for appeal bonds, attachment bonds or similar bonds arising out of a covered judgment. The Insurer has no obligation to provide such bonds. **Defense Costs** shall not include salaries, wages, fees, overhead or benefit expenses associated with the directors, officers, and employees of the **Insured Entity**.

**Employee** means any past, present or future full-time, part-time, seasonal or temporary employee of the **Insured Entity**. **Employee** does not include any **Executive**.

**ERISA or any Similar Act** means the Employee Retirement Income Security Act of 1974, as amended, or any similar common or statutory law of the United States, Canada or their states, territories or provinces or any other jurisdiction anywhere in the world.

**Executive** means with respect to the **Insured Entity** any past present or future its chairperson, chief executive officer, president, chief financial officer and in-house general counsel, senior trust officer with respect to any financial institution.

**Fungi** means any form of fungus, including but not limited to yeast, mold, mildew, rust, smut or mushroom, and any spores, mycotoxin, odors  or any other substances, products, or by products produced by, released by, or arising out of the current or past presence of fungi.

GSL2435 (c)ed. 9 07
Page 1

© CNA  All Rights Reserved.



**INSURANCE COMPANY E&O SOLUTIONS**

**Insured** means any **Insured Person** and **Insured Entity.**

**Insured Entity** means the **Named Insured** and any **Subsidiary**, including any such entity as a debtor in possession under United States bankruptcy law or an equivalent status under the law of any other country.

**Insured Person** means any **Executive** or **Employee** of an **Insured Entity**.

**Interrelated Wrongful Acts** means any **Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction or event.

**Loss** means damages, settlements, judgments (including any award of pre-judgment and post-judgment interest on a covered judgment) and **Defense Costs** for which the **Insured** is legally obligated to pay on account of a covered **Claim**.

However, **Loss** shall not include:
1.   criminal or civil fines, penalties or taxes imposed by law;
2.   matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed;
3.   any amount for which an **Insured** is absolved from payment by reason of any covenant, agreement or court order; or
4.   any actual or alleged fees or other compensation paid to or claimed by the **Insureds**;
5.   any amount which constitues disgorgement, including restitution;
6.   diminution in value or damages resulting from the diminution in value of money, securities, property or any other item of value
7.   actual money, securities, property or other items of value in the custody or control of an **Insured**;
8.   amounts otherwise reimbursable to an **Insured** by any trust, estate, plan or fund or any similar entity or the sponsor of any such trust, estate plan or fund or any similar entity; or
9.   premiums, return premiums or commission

Notwithstanding the foregoing paragraph, **Loss** shall include (subject to this Policy's other terms, conditions and limitations, including but not limited to exclusions relating to profit or advantage, deliberate fraud), punitive, exemplary and multiplied damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages.

**Management Control** means:
1.   owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the Board of Directors of a corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company; or
2.   having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of an **Insured Entity**, to elect, appoint or designate a majority of: the Board of Directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company.

**Microbe** means any non-fungal microorganism or non-fungal colony-form organism that causes infection or disease including but not limited to any spores, mycotoxin, odors or any other substances, products, or by products produced by, released by, or arising out of the current or past presence of microbes.

**Named Insured** means the company named in Item 1 of the Declarations, including such company as a debtor in possession under United States bankruptcy law or an equivalent status under the law of any other country.

**Policy Period** means the period from the effective date of this Policy to the Policy expiration date stated in Item 2 of the Declarations, or its earlier cancellation date.

© CNA  All Rights Reserved.



**INSURANCE COMPANY E&O SOLUTIONS**

**Pollutants** means any substance exhibiting hazardous characteristics as is or may be defined or identified on any list of hazardous substances issued by the United States Environmental Protection Agency or any state, local or foreign counterpart. **Pollutants** also means, without limitation, any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste (including materials to be recycled, reconditioned or reclaimed), as well as any air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos, or asbestos products or any noise.

**Professional Services** means those services performed by or on behalf of the **Insured Entity** for a policyholder or **client** of **Insured Entity** pursuant to a written contract with such policyholder or **client** for consideration inuring to the benefit of such **Insured**. **Professional Services** do not include services as an insurance producer.

**Securities Broker/Dealer** means a person or entity acting as a "broker" or "dealer" in securities as such terms are defined in Sections 3(a)(4) and 3(a)(5) of the Securities Exchange Act of 1934, as amended.

**Subsidiary** means:
1. any entity (other than a partnership) in which the **Named Insured** has **Management Control** directly or indirectly through one or more other **Subsidiaries**:
   a. on or before the effective date of this Policy; or
   b. after the effective date of this Policy by reason of being created or acquired by the **Insured Entity** after such date, if and to the extent coverage with respect to the entity is afforded pursuant to Section XV.1; or
2. any not-for-profit entity under section 501(c) (3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by the **Insured Entity**

**Takeover** means:
1. the acquisition by another entity or person, or group of entities or persons acting in concert, of:
   a. the ownership or control of voting stock of the **Named Insured** resulting in such entity, person or group owning or controlling more than 50% of the voting stock of the **Named Insured**, or
   b. assets of the **Named Insured** resulting in such entity, person or group owning more than 50% of the total consolidated assets of the **Named Insured** as of the date of the **Named Insured's** most recent audited consolidated financial statement prior to such acquisition;
2. the merger of the **Named Insured** into another entity such that the **Named Insured** is not the surviving entity; or
3. the consolidation of the **Named Insured** with another entity.

**Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by the **Insureds**.

## III.  EXCLUSIONS

The Insurer shall not be liable to pay that part of **Loss** under this Policy in connection with any **Claim** made against the **Insured Persons** or the **Insured Entity**:

1. **Bodily Injury/Property Damage/Defamation**

   for any actual or alleged bodily injury (including death), sickness, disease, emotional distress, mental anguish, libel, slander or defamation of any person, or damage to or destruction of any tangible property including loss of use;

2. **ERISA or any Similar Act**

   for any actual or alleged violation of the responsibilities, obligations or duties imposed upon fiduciaries by **ERISA or any Similar Act** in connection with any employee pension benefit plan, employee welfare

© CNA  All Rights Reserved.



**INSURANCE COMPANY E&O SOLUTIONS**

benefit plan or excess benefit plan as defined in 29 U.S.C. §1002, or employee stock ownership plan as defined in 26 U.S.C. §4975, of **Insured Entity**;

3.      **Prior Notice**

based upon or arising out of:
a.      any **Wrongful Act** or any matter, fact, circumstance, situation, transaction, or event notice of which was given by an **Insured** under any policy of which this Policy is a direct or indirect renewal or replacement; or
b.      any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in a. above, would constitute **Interrelated Wrongful Acts**;

4.      **Prior or Pending**

based upon or arising out of or constituting any civil, criminal, administrative or regulatory proceeding, investigation or arbitration against any of the **Insureds** which was pending on or prior to the Prior or Pending Date set forth in the Declarations or the same or essentially the same fact, circumstance, situation, transaction or event underlying or alleged in such proceeding, investigation or arbitration;

5.      **Underwriting/Pricing/Reserving/Insolvency Risk**

based upon or arising out of:
a.      the underwriting or rating of insurance, including any decisions involving the classification, selection, and renewal of risks;
b.      the:

(1)      adequacy or inadequacy of any claim reserves of **Named Insured**, any **Subsidiary** or any entity to which the **Insureds** provide **Professional Services**; or

(2)      bankruptcy, insolvency, receivership, liquidation or financial inability of any **Insureds** or any entity to which the **Insureds** provide **Professional Services** to pay claims or perform **Professional Services**;

(3)      bankruptcy, insolvency, receivership, liquidation or financial inability to pay of any insurance company with which the **Insureds** has placed or obtained any insurance or bond;

6.      **Pollution**

based upon or arising out of: any nuclear reaction, radiation or contamination, or any actual, alleged or threatened discharge, release, escape, or disposal of, or exposure to, **Pollutants**; any request, direction or order that any of the **Insureds** test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effect of **Pollutants** or nuclear reaction, radiation or contamination, or any voluntary decision to do so; or any actual or alleged property damage, or bodily injury, sickness, disease or death of any person, or financial loss to the **Insured Entity**, their security holders, or their creditors resulting from any of the aforementioned matters;

7.      **Deliberate Acts**

based upon or arising out of the committing of any deliberate fraudulent or deliberate criminal act by the **Insured** if a judgment, ruling or other finding of fact in any proceeding establishes that such act was committed.
For purposes of determining the applicability of Exclusion 7:
a.      the facts pertaining to and knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**; and
b.      only facts pertaining to and knowledge possessed by any past, present or future chair of the Board, president, chief executive officer, chief financial officer, chief operating officer or general counsel (or equivalent position) of an **Insured Entity** shall be imputed to the **Insured Entities**.

© CNA  All Rights Reserved.



**INSURANCE COMPANY E&O SOLUTIONS**

8.    **REITS**

forming, syndicating, operating, administering, advising, or rolling up a limited partnership or real estate investment trust; provided, however, this exclusion shall not apply to the advising of a limited partnership, other than a real estate limited partnership, where the **Insureds** do not act as a general partner to the limited partnership and such limited partnership is not otherwise owned, managed, operated or in any way affiliated with the **Insureds**;

9.    **Claims by Insureds**

by or on behalf of any **Insured** provided, however that this Exclusion shall not apply to:
i.      any **claim**  by an **Insured Person** arising out of **professional services** by an **Insured** rendered to such **Insured Person** as a client;
ii.     any **Claim** that is in the form of a crossclaim, third-party claim or otherwise for contribution or indemnity which is part of and results directly from a **Claim** which is not otherwise excluded under this Policy; or
iii.    any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, liquidator, receiver or rehabilitator for an **Insured Entity** or any assignee of such trustee, examiner, liquidator, receiver or rehabilitator;

10.   **Claims by Reinsurers**

by or on behalf of or with the solicitation, assistance, participation or intervention of any reinsurer of the **Insured Entity** in its capacity as reinsurer;

11.   **Prior Wrongful Acts of Subsidiaries**

based upon or arising out of:
a.     any **Wrongful Act** by **Insured Persons** of any **Subsidiary** or by such **Subsidiary**, occurring before the date such entity became a **Subsidiary**, or
b.     any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in a. above, would constitute **Interrelated Wrongful Acts**;

12.   **Claims by Pools and Syndicates**

by or on behalf of or with the solicitation, assistance, participation or intervention of:

a.     any pool, association or syndicate (including any officer, employee or director thereof) in which the **Insureds** are a participant; or

b.     any participant (including any officer, employee or director thereof) in any such pool, association or syndicate in which the **Insureds** are a participant;

involving the business or operations of such pool, association or syndicate;

13.   **Contractual Liability/Promises/Guarantees**
based upon or arising out of:

A.     liability of others assumed by an **Insured** under any contract or agreement; (including but not limited to any policy, contract or agreement of insurance, reinsurance, suretyship, annuity or endowment);

B.     any actual or alleged:
1.      oral or written representation, warranty, promise or guarantee:of the past performance or future value of any insurance product or investment product;

© CNA  All Rights Reserved.



**INSURANCE COMPANY E&O SOLUTIONS**

2.    oral or written representation, warranty, promise or guarantee or estimate of probable construction costs made in connection with **Professional Services**,

provided, however, that this exclusion shall not apply to the extent that liability would attach to an Insured in the absence of such contract or agreement;

14.    **Unauthorized Access**

based upon or arising out of the unauthorized access to any electronic data processing system of the **Insureds**;

15.    **Loan/Lease/Extension of Credit**

based upon or arising out of any actual or alleged purchase, sale, origination, participation, grant, commitment, restructuring, termination, transfer, repossession or foreclosure of any loan, lease or extension of credit, or the failure to do any of the foregoing, or the rendering of advice in connection with any loan, lease or extension of credit;

16.    **Mergers & Acquisitions**

based on or arising out of giving advice or performing services in connection with any aspect of mergers, acquisitions, securities underwritings, restructurings, divestitures or investment banking; provided, however, this exclusion shall not apply to any of the **Insureds** who are not a party, and do not represent a party, to any of the aforementioned transactions, and who in the ordinary course of business provide investment advice or investment supervisory services with respect to the securities involved in such transactions;

17.    **Other Services**

based on or arising out of the rendering of any services provided in an **Insured's** capacity as a Securities Broker/Dealer, real estate broker or agent, insurance or reinsurance producer or intermediary, escrow agent, property manager or title agent;

18.    **Fungi or Microbes**

based upon or arising out of any actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, growth or presence of **Fungi** or **Microbes**; or the actual, alleged or threatened failure to detect, report, test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remediate, disposal of or in any way respond to, assess the effects of or advise of the existence of any **Fungi** or **Microbes**. This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to the **Loss** claimed;

19.    **Medical Dental**

based upon or arising out of the provision of:  medical, dental or related health care services; health care cost review; health care professional peer review; utilization review; or the administration and management of a health care plan;

20.    **Claims by Non-Clients**

by on behalf of any natural person or entity that is not a **Client**  except that this exclusion does not apply to any **Claim**:

A.    brought by a non-**Client** under any statute allowing a claimant to directly sue a tortfeasor's insurer ;

B.    brought by non-**Clients** with whom a **Client** has a contractual relationship (other than an employment relationship)  if such claim arises out of **Wrongful Act** in the rendering of **Professional Services** by an **Insured,** or

© CNA  All Rights Reserved.



INSURANCE COMPANY E&O SOLUTIONS

   C.   made by a person or entity who is bringing such **Claim** by or on behalf of the **Client** (including subrogation claims) or by the estate of the **Client**.

---

## IV.   LIMIT OF LIABILITY/RETENTION/COINSURANCE

   1.   **Aggregate Limit of Liability**

The Limit of Liability stated in Item 6 of the Declarations is the aggregate limit of the Insurer's liability for all **Loss** under this Policy arising out of all **Claims** first made against **Insureds** during the **Policy Period** and the Extended Reporting Period (if applicable). The Limit of Liability for the Extended Reporting Period shall be part of and not in addition to the Limit of Liability for the **Policy Period**. Further, a **Claim** which is made subsequent to both the **Policy Period** and the Extended Reporting Period (if applicable) and which pursuant to Section VI. is considered made during the **Policy Period** or Extended Reporting Period shall also be subject to the one aggregate Limit of Liability stated in Item 6 of the Declarations.

**Defense Costs** are part of **Loss** and as such are subject to the Limit of Liability for **Loss**.

   2.   **Retention**

The Insurer shall only be liable for the amount of **Loss** arising from each **Claim** which is in excess of the applicable Retention amount stated in Item 7 of the Declarations. The Retention amount shall apply to **Loss** arising from each **Claim** and from all **Claims** alleging the same **Wrongful Act** or **Interrelated Wrongful Acts**. The Retention shall be uninsured. The Insurer will have no obligation to pay all or any portion of any applicable retention.

   3.   Coinsurance

With respect to all **Loss** (excess of the applicable Retention) on account of covered **Claims**, the **Insureds** shall bear uninsured and at their own risk that percentage of all such **Loss** specified in the Declarations as a Coinsurance percentage.  This percentage shall be applied to all **Loss** on account of all **Claims**.  The Insurer's liability shall apply only to the remaining percent of all such **Loss**.

---

## V.   SETTLEMENT/DEFENSE OF CLAIMS/ALLOCATION OF LOSS/ADVANCEMENT OF DEFENSE COSTS

   1.   **Settlement/Insurer's Consent**

The **Insureds** shall not admit or assume any liability, consent to any judgment, agree to any settlement or make any settlement offer without the Insurer's prior written consent, such consent not to be unreasonably withheld. The Insurer shall not be liable for any **Loss** incurred by an **Insured** to the extent the **Loss** results from such **Insured** admitting liability, consenting to any judgment, agreeing to any settlement or making any settlement offer without the Insurer's prior written consent. The **Insureds** agree that they shall not knowingly take any action while a **Claim** is pending which increases the Insurer's exposure for **Loss** under this Policy.

Notwithstanding the above, if the **Insureds** are able to settle all **Claims** which are subject to a single Retention for an aggregate amount, including **Defense Costs**, not exceeding such Retention, the Insurer's consent shall not be required for the settlement of such **Claims**.

   2.   **Defense of Claims**

The **Insureds** and not the Insurer have the duty to defend **Claims**. The Insurer shall be entitled to effectively associate in the defense and the negotiation of any settlement of any **Claim** that involves or appears reasonably likely to involve the Insurer.

© CNA  All Rights Reserved.



3.      **Allocation of Loss**

If a **Claim** made against the **Insureds** includes both covered and uncovered matters or if a **Claim** is made against **Insureds** who are extended coverage therefore and others who are not extended coverage therefore, the **Insureds** agree that there must be an allocation between insured and uninsured loss. The **Insureds** and the Insurer shall exert their best efforts to agree upon a fair and proper allocation between insured and uninsured loss.

4.      **Conditions for Advancement of Defense Costs**

The Insurer, on behalf of the **Insureds**, shall advance **Defense Costs** no later than ninety (90) days after the receipt by the Insurer of itemized defense bills in excess of the applicable Retention. However, advancement of **Defense Costs** shall be subject to the following conditions:

a.      if the **Insureds** and the Insurer agree on an allocation of insured and uninsured **Defense Costs**, the Insurer shall advance the amount of insured **Defense Costs**;

b.      if the **Insureds** and the Insurer cannot, after exerting their best efforts, agree on an allocation of insured and uninsured **Defense Costs**, the Insurer then shall advance the percentage of **Defense Costs** which the Insurer states to be fair and proper until a different allocation is agreed upon or determined pursuant to the provisions of this Policy and applicable law;

c.      the **Insureds** shall provide a written undertaking satisfactory to the Insurer to repay the Insurer any **Defense Costs** finally established not to be insured; and

d.      any allocation or advancement of **Defense Costs** shall not apply to or create any presumption with respect to the allocation of other **Loss**.

## VI.      REPORTING/DATE OF CLAIM/INTERRELATED CLAIM CLAUSE

1.      **Notice of Claim**

The **Insureds** shall, as a condition precedent to the obligations of the Insurer under this Policy, give written notice to the Insurer of a **Claim** as soon as practicable after the **Named Insured's** Risk Manager or General Counsel (or equivalent position) first become aware of such **Claim**, but in no event later than thirty (30) days after the end of the **Policy Period** or the Extended Reporting Period if applicable.

2.      **Notice of Circumstance**

If during the **Policy Period** the **Insureds** first become aware of any facts or circumstances which may reasonably be expected to give rise to a **Claim** and during such period give written notice to the Insurer of:

a.      the **Wrongful Act** allegations anticipated as the basis of the potential **Claim** and the names of any potential claimants;

b.      the identity of the specific **Insureds** allegedly responsible for such specific **Wrongful Act**,

c.      the consequences which have resulted or may result from such specific **Wrongful Act**,

d.      the nature of the potential monetary damages or non-monetary relief which may be sought in consequence of such specific **Wrongful Act**, and

e.      the circumstances by which **Insureds** first became aware of such specific **Wrongful Act**,

then any **Claim** otherwise covered pursuant to this Policy which is subsequently made and which arises out of such **Wrongful Act** shall be deemed to have been first made against the **Insured** and reported to the Insurer by the **Insureds** at the time such written notice was received by the Insurer. No coverage is provided for fees and expenses incurred prior to the time such notice results in a **Claim**.

3.      **When a Claim is Deemed Made**

Except as provided in 2 above, a **Claim** shall be deemed made:

© CNA  All Rights Reserved.

**INSURANCE COMPANY E&O SOLUTIONS**

a. in the case of a written demand for monetary damages or non-monetary relief, on the **Insured's** receipt of notice of such demand;.

b. in the case of a civil proceeding in a court of law or equity or arbitration, on the date of service upon or other receipt by any **Insured** of a complaint against the **Insured** in such proceeding or arbitration;

c. in the case of a formal administrative or regulatory proceeding, on the earliest of the date of service upon or other receipt by the **Insured** of a complaint or similar document against the **Insured**, a notice of charges against the **Insured** or a written notice or subpoena from the regulatory or investigating authority identifying such **Insured** as a person against whom a regulatory or formal investigative proceeding may be commenced.

4. **Interrelated Claims**

More than one **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be considered as one **Claim** which shall be deemed to have been first made on the earlier of:

a. the date on which the earliest such **Claim** was first made, or

b. the first date valid notice was given by the **Insureds** to the Insurer under this Policy of any **Wrongful Act** or under any prior policy of any **Wrongful Act** or any fact, circumstance, situation, event or transaction which underlies any such **Claim**.

5. **To Whom Notices are Sent**

The **Insureds** shall give written notice to the Insurer under this Policy as specified in Item 4 of the Declarations. If mailed, the date the Insurer receives such notice shall constitute the date such notice was given. Proof of mailing shall be sufficient proof of notice.

## VII.   EXTENDED REPORTING PERIOD

1. **Optional Extended Reporting Period**

If the Insurer non-renews this Policy, the **Named Insured** shall have the right to purchase, upon payment of an additional premium determined as described in Item 5b of the Declarations, an extension of this Policy for the period described in Item 5a of the Declarations, but only to the extent a **Claim** is first made or deemed to be first made during such period for **Wrongful Acts** committed before the earlier of the end of the **Policy Period** or the effective date of any **Takeover**.

This period shall be referred to as the Extended Reporting Period.

2. **Payment of Extended Reported Period Premium**

As a condition precedent to the right to purchase the Extended Reporting Period, the total premium for this Policy must have been paid. The right to purchase the Extended Reporting Period shall end unless the Insurer receives written notice of the **Named Insured's** election to purchase the Extended Reporting Period and full payment of the premium for such period within 30 days after the end of the **Policy Period**.

3. **Non-Cancelable/Premium Fully Earned**

If the Extended Reporting Period is purchased, it is non-cancelable and the entire premium shall be deemed fully earned at its commencement without any obligation by the Insurer to return any portion thereof.

4. **No Separate Limit**

There is no separate or additional Limit of Liability for the Extended Reporting Period.

© CNA  All Rights Reserved.



**INSURANCE COMPANY E&O SOLUTIONS**

**VIII.     CANCELLATION**

1.      **Insurer's Right to Cancel**

The Insurer shall not cancel this Policy except for non-payment of any premium when due. The Insurer shall provide to the **Named Insured** written notice of such cancellation stating when, not less than 15 days thereafter, such cancellation shall be effective, except that non-payment of premium due at inception of this Policy will result in the policy being cancelled effective as of the inception date.

2.      **Named Insured's Right to Cancel**

The **Insureds** grant the exclusive authority to cancel this Policy to the **Named Insured**. The **Named Insured** may cancel this Policy by providing the Insurer written notice stating when thereafter such cancellation shall be effective. The mailing or delivery of such notice shall be sufficient. The unearned premium shall be computed in accordance with customary short rate provisions and premium adjustment may be made at the time cancellation is effected or as soon as practicable.

**IX.     TERRITORY**

Coverage shall apply to **Claims** made and **Wrongful Acts** committed worldwide.

**X.     APPLICATION**

The **Insureds** represent and acknowledge that the statements contained in the **Application** and any materials submitted or required to be submitted therewith (which shall be maintained on file by the Insurer and be deemed attached to and incorporated into this Policy as if physically attached), are true and:
(i)      are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy; and
(ii)      shall be deemed material to the acceptance of this risk or the hazard assumed by the Insurer under this Policy.
This Policy is issued in reliance upon the truth of such representations.

In the event the statements, representations or information in the **Application**, including materials submitted or required to be submitted therewith, contains any misrepresentation or omission which materially affects either the acceptance of the risk or the hazard assumed by the Insurer under this Policy this Policy shall be void from inception as any **Insured** who knew as of the effective date of this Policy the facts that were misrepresented or omitted, whether or not such person knew of such untruthful disclosure in the **Application**. For purposes of this paragraph, the knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**, and only the knowledge of an **Executive** shall be imputed to the **Insured Entity**.

**XI.     OTHER INSURANCE**

If any **Loss** resulting from any **Claim** is insured under any other insurance, this Policy shall apply only as excess over any other valid and collectible insurance unless such other insurance is written only as specific excess insurance over the limit of liability provided by this Policy. This Policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this Policy may be obligated to pay **Loss.**

**XII.     VALUATION**

All premiums, limits, retentions, **Loss** and other amounts under this policy are expressed and payable in United States of America currency. If any judgment, settlement or any part of **Loss** is expressed or calculated in any other currency, payment of such **Loss** due under this Policy will be made in the currency of the United States of

© CNA  All Rights Reserved.



**INSURANCE COMPANY E&O SOLUTIONS**

America, at the rate of exchange published in The Wall Street Journal on the date the Insurer's obligation to pay such **Loss** is established, or, if not published on that date, on the date of next publication.

## XIII.  NO ACTION AGAINST INSURER

1.  No action shall be taken against the Insurer unless, as a condition precedent, there shall have been full compliance with all the provisions of this Policy nor until the amount of the **Insureds'** obligation to pay shall have been finally determined either by final and nonappealable judgment against the **Insureds** after trial or by written agreement of the **Insureds**, the claimant and the Insurer.

2.  No person or organization shall have any right under this Policy to join the Insurer as a party to any **Claim** against the **Insureds** to determine the **Insureds'** liability, nor shall the Insurer be impleaded by the **Insureds** or their legal representatives in any such **Claim**.

## XIV.  ASSIGNMENT OF INTEREST

Assignment of interest under this Policy shall not bind the Insurer unless the Insurer's consent to such assignment is endorsed to this Policy.

## XV.  COVERAGE FOR NEW SUBSIDIARIES

1.  If, after the effective date of this Policy the **Insured Entity** first has **Management Control** of any entity, then such entity and any subsidiaries, directors, officers, trustees or employees of such entity who otherwise would thereby become an **Insured** shall be covered under this Policy, subject to its terms and conditions, provided that if the total assets (as reflected in the most recent audited consolidated financial statements of such entity and the **Insured Entity**) exceeds ten percent (10%) of the combined total assets of all **Insured Entities**, as of the inception date of this Policy, then the Insurer, at its sole option upon submission of such information as the Insurer may require, and payment of any additional premium or amendment of the provisions of the Policy, may agree to provide coverage for such subsidiaries, directors, officers or employees.

2.  There shall be no coverage under this Policy for any **Wrongful Act** by such entity, or by any persons or entities considered to be **Insureds** pursuant to Section XV.1 above, where such **Wrongful Act** occurred in whole or in part before the date the **Insured Entity** first has such **Management Control** or for any **Wrongful Act** occurring on or after such date which, together with any **Wrongful Acts** occurring before such date, would be considered **Interrelated Wrongful Acts**.

## XVI.  CHANGE OF STATUS OF INSUREDS

1.  **Takeover** of the **Named Insured**

In the event of a **Takeover** of the **Named Insured**, coverage under this Policy shall continue until this Policy is otherwise terminated, but only with respect to **Claims** for **Wrongful Acts** occurring before the effective date of the **Takeover**, unless (i) the Insurer is notified in writing of the **Takeover** prior to the **Takeover** effective date and agrees in writing to provide coverage for **Wrongful Acts** occurring on or after such effective date, and (ii) the **Named Insured** accepts any special terms, conditions and exclusions or pays any additional premium charge required by the Insurer. This Policy may not be canceled after the effective date of the **Takeover** and the entire premium for this Policy shall be deemed earned as of such effective date.

2.  Cessation of **Subsidiary**

© CNA  All Rights Reserved.



INSURANCE COMPANY E&O SOLUTIONS

If any organization ceases to be a **Subsidiary**, coverage under this Policy shall continue until this Policy is otherwise terminated, but only with respect to **Claims** for **Wrongful Acts** occurring before the effective date of such cessation, unless (i) the Insurer is notified in writing of such cessation prior to the effective date thereof and agrees in writing to provide coverage for **Wrongful Acts** occurring on or after such effective date, and (ii) the **Insured Entity** accepts any special terms, conditions and exclusions and pays any additional premium charge required by the Insurer.

## XVII.   ASSISTANCE AND COOPERATION

Each **Insured** shall give the Insurer full cooperation and shall furnish the Insurer with copies of reports, investigations, pleadings, and all related papers, and such other information, assistance and cooperation as the Insurer may reasonably request. The **Insureds** shall do nothing which in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery.

## XVIII.   SUBROGATION AND RECOVERY

To the extent it pays any **Loss**, the Insurer shall be subrogated to all the **Insureds'** rights of recovery therefore. The **Insureds** shall execute all papers necessary to secure such rights, including executing any documents necessary to enable the Insurer effectively to bring suit in their name, and shall take no action which impairs the Insurer's rights of subrogation or recovery.

## XIX.   NOTICES TO THE NAMED INSURED

Any notices to the **Named Insured** under this Policy shall be provided to the **Named Insured** at the last known address and to its insurance agent or broker. If properly mailed to the **Named Insured** at such address, the date of mailing shall constitute the date such notice was given.

## XX.   CHANGES

Notice to or knowledge possessed by any agent or other person acting on behalf of the Insurer shall not effect a waiver or a change in any part of this Policy or stop the Insurer from asserting any right under the provisions of this Policy, nor shall the provisions be waived or changed except by written endorsement issued to form a part of this Policy.

## XXI.   COMPANY AUTHORIZATION

The **Insureds** agree that the **Named Insured** will act on behalf of the **Insureds** with respect to giving of all notice to the Insurer (except notices provided in Section VI.1 or 2), the receipt of notices from the Insurer, the payment of the premiums, the receipt of any return premiums that may become due under this Policy, and the agreement to and acceptance of endorsements.

## XXII.   ENTIRE AGREEMENT

The **Insureds** agree that this Policy, including the **Application** and any materials submitted or required to be submitted therewith, and any written endorsement attached, constitute the entire contract existing between them and the Insurer or any of its agents relating to this insurance.

## XXIII.   BANKRUPTCY

Bankruptcy or insolvency of any **Insured Entity** or any **Insured Person** shall not relieve the Insurer of any of its obligations hereunder.

## XXIV.   ALTERNATIVE DISPUTE RESOLUTION PROCESS

© CNA  All Rights Reserved.



**INSURANCE COMPANY E&O SOLUTIONS**

All disputes or differences between the **Insured** or Insurer which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of **Loss**, shall be submitted to the alternative dispute resolution ("**ADR**") process set forth in this Section.

Either the Insurer or an **Insured** may elect the type of **ADR** process discussed below; provided, however, that such **Insured** shall have the right to reject the Insurer's choice of the type of **ADR** process at any time prior to its commencement, in which case such **Insured's** choice of **ADR** process shall control.

The Insurer and each and every **Insured** agrees that there shall be two choices of **ADR** process:
1.  non-binding mediation administered by the American Arbitration Association, in which the Insurer and any such **Insured** shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or
2.  arbitration submitted to the American Arbitration Association in accordance with its then-prevailing Commercial Arbitration Rules, in which the arbitration panel shall consist of three disinterested individuals.

In either mediation or arbitration, the mediator or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator or arbitrators shall also give due consideration to the general principles of the law of the state where the **Named Insured** is incorporated in the construction or interpretation of the provisions of this policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorney's fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 60 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the **ADR** process.

Either choice of **ADR** process may be commenced in New York or Illinois or in the state indicated in the Declarations as the mailing address for the **Named Insured**.

## XXV.   HEADINGS

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

IN WITNESS WHEREOF, the Insurer has caused this Policy to be executed by its Chairman and Secretary, but this Policy shall not be binding upon us unless completed by the attachment of the Declarations.

Chairman                                    Secretary
                                            **Error! Objects cannot be created from editing field codes.**

Thomas F. Motamed                           Jonathan D. Kantor

© CNA  All Rights Reserved.



## POLICYHOLDER NOTICE

Ethics and proper business conduct has been the cornerstone of CNA since 1897. While much has changed during the last century, our commitment to these core values has not wavered. We strongly believe that proper business conduct is more than the practice of avoiding wrong; it is also a matter of choosing to do right. Nowhere is this more essential than helping in the fight against terrorism. As such, we are committed to complying with U.S. Department of Treasury Office of Foreign Asset Control (OFAC) requirements.

Through a variety of laws, OFAC administers and enforces economic sanctions against countries and groups of individuals, such as terrorists and narcotics traffickers. These laws prohibit all United States citizens (including corporations and other entities) and permanent residents from engaging in transactions with sanctioned countries and with individuals and entities on the Specially Designated Nationals (SDN) list. Because all U.S. citizens and companies are subject to this law, we wanted to be sure you were aware of its scope and restrictions. If you haven't already done so, you may want to consider discussing this issue with your legal counsel to ensure you are in compliance.

For insurance companies, accepting premium from, issuing a policy to, insuring property of, or making a claim payment to an individual or entity that is the subject of U.S.-imposed economic sanctions or trade embargoes usually are violations of these laws and regulations. Fines for violating OFAC requirements can be substantial. CNA has established an OFAC compliance program part which includes the use of exclusionary policy language. We believe this makes good business sense for CNA and you.

Our records indicate that you have insurance coverage coming up for renewal with us. The purpose of this letter is to advise you that your renewal policy includes OFAC exclusionary policy language, which may reduce or eliminate certain coverage. Specifically, if it is determined that your policy violates certain Federal or State laws or regulations, such as the U.S. list of Specially Designated Nationals or Blocked Persons (organizations or individuals associated with terrorist groups), any term or condition of your policy will be null and void to the extent it violates the applicable laws or regulations of the United States.

We're sure you share our commitment to compliance and thank you for your cooperation.

Your policy language reads as follows:

## ECONOMIC AND TRADE SANCTIONS CONDITION

The following condition is added to the Policy:

**ECONOMIC AND TRADE SANCTIONS CONDITION**

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy is void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

1.      Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to U.S. economic or trade sanctions;

2.      Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country Government, where any action in connection with such claim or suit is prohibited by U.S. economic or trade sanctions;

3.      Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to U.S. economic or trade sanctions;

---

ENDORSEMENT NUMBER: 1
POLICY NUMBER: 425252346
ISSUED TO: State Automobile Mutual Insurance Co

---

G-145125-A  (ED. 08/03)
Page 1 of 2



4.      Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country Government, where any activities related to such property are prohibited by U.S. economic or trade sanctions; or

5.      Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to U.S. economic or trade sanctions.

As used in this endorsement a Specially Designated National or Blocked Person is any person or entity that is on the list of Specially Designated Nationals and Blocked Persons issued by the U.S. Treasury Department's Office of Foreign Asset Control (O.F.A.C.) as it may be from time to time amended.

As used in this endorsement a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.

---

ENDORSEMENT NUMBER: 1
POLICY NUMBER: 425252346
ISSUED TO: State Automobile Mutual Insurance Co
EFFECTIVE DATE OF ENDORSEMENT: 12/01/2016

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown above.

By Authorized Representative _____
(No signature is required if this endorsement is issued with the Policy or if it is effective on the Policy Effective Date)



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ECONOMIC AND TRADE SANCTIONS CONDITION**

The following condition is added to the Policy:

## ECONOMIC AND TRADE SANCTIONS CONDITION

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy is void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

1.  Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to U.S. economic or trade sanctions;

2.  Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country Government, where any action in connection with such claim or suit is prohibited by U.S. economic or trade sanctions;

3.  Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to U.S. economic or trade sanctions;

4.  Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country Government, where any activities related to such property are prohibited by U.S. economic or trade sanctions; or

5.  Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to U.S. economic or trade sanctions.

As used in this endorsement a Specially Designated National or Blocked Person is any person or entity that is on the list of Specially Designated Nationals and Blocked Persons issued by the U.S. Treasury Department's Office of Foreign Asset Control (O.F.A.C.) as it may be from time to time amended.

As used in this endorsement a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.

_____

ENDORSEMENT NUMBER: 2
POLICY NUMBER: 425252346
ISSUED TO: State Automobile Mutual Insurance Co
EFFECTIVE DATE OF ENDORSEMENT: 12/01/2016

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown above.

By Authorized Representative _____
(No signature is required if this endorsement is issued with the Policy or if it is effective on the Policy Effective Date)

G-145184-A (Ed. 6/03)
Page 1 of 1



**AMENDMENT THRESHOLD COVERAGE FOR NEW SUBSIDIARIES AND PLANS ENDORSEMENT
(VARIABLE)**

In consideration of the premium paid for this Policy, it is understood and agreed that Section **XV. COVERAGE FOR NEW SUBSIDIARIES**, Paragraph 1. is deleted in its entirety and replaced with the following:

1.      If, after the effective date of this Policy the **Insured Entity** first has **Management Control** of any entity, then such entity and any subsidiaries, directors, officers, trustees or employees of such entity who otherwise would thereby become an **Insured** shall be covered under this Policy, subject to its terms and conditions, provided that if the total assets (as reflected in the most recent audited consolidated financial statements of such entity and the **Insured Entity**) exceeds twenty-five percent ( 25%) of the combined total assets of all **Insured Entities**, as of the inception date of this Policy, then the Insurer, at its sole option upon submission of such information as the Insurer may require, and payment of any additional premium or amendment of the provisions of the Policy, may agree to provide coverage for such subsidiaries, directors, officers or employees.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

© CNA  All Rights Reserved.



**BILATERAL EXTENDED REPORTING PERIOD**

In consideration of the premium paid for this Policy, it is understood and agreed that Section **VII. EXTENDED REPORTING PERIOD**, Paragraph 1. is deleted in its entirety and replaced with the following:

1.      **Optional Extended Reporting Period**

If the **Named Insured** or the Insurer cancels or non-renews this Policy, the **Named Insured** shall have the right to purchase, upon payment of an additional premium determined as described in Item 5b of the Declarations, an extension of this Policy for a period described in Item 5a of the Declarations immediately following the end of the **Policy Period**, but only with respect to any **Wrongful Act** committed before the earlier of the end of the **Policy Period** or the effective date of any **Takeover**;

This period shall be referred to as the Extended Reporting Period.

All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

---

GSL11076XX (7-08)
Page 1
Columbia Casualty Company
Insured Name: State Automobile Mutual Insurance Co

Policy No:      425252346
Endorsement No:   4
Effective Date:   12/01/2016

© CNA  All Rights Reserved.

**CNA**

## AMEND DEFINITION OF CLAIM TO INCLUDE NON-MONETARY RELIEF ENDORSEMENT

In consideration of the premium paid for this Policy, it is understood and agreed that Section II. DEFINITIONS, the definition of **Claim** is deleted in its entirety and replaced with the following:

**Claim** means:
1.      a written demand for monetary damages or non-monetary relief;
2.      a civil proceeding in a court of law or equity or arbitration; or
3.      a formal administrative or regulatory proceeding, against an **Insured**, including any appeal therefrom.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

GSL11078XX (7-08)                                    Policy No:      425252346
Page 1                                              Endorsement No:  5
Columbia Casualty Company                           Effective Date:  12/01/2016
Insured Name: State Automobile Mutual Insurance Co
© CNA  All Rights Reserved.



## EMPLOYED LAWYERS ENDORSEMENT

In consideration of the premium paid for this Policy, it is hereby understood and agreed that the Policy is amended as follows:

1.      Section **II. DEFINITIONS**, is amended as follows:

     A.      the definition of **Insured Persons** is amended to include any **Employed Lawyer**, but only for **Claims** alleging a **Wrongful Act** in his/her capacity as an **Employed Lawyer** of an **Insured Entity**.

     B.      the definition of **Wrongful Act** shall include any negligent act, error or omission of an **Employed Lawyer** in rendering or failure to render professional services as a lawyer for or on behalf of an **Insured Entity**. The definition of **Wrongful Act** shall not include: (i) any activities which are not related to such **Employed Lawyer's** employment with an **Insured Entity**, or (ii) any activities which are not rendered on behalf of an **Insured Entity**, or (iii) professional services performed by the **Employed Lawyer** for others for a fee.

     C.      The following new definition is added:

-      **Employed Lawyer** shall mean any natural person admitted to the practice of law in any state who is or was employed as a lawyer full time and salaried by an **Insured Entity**.

2.      Section **III. EXCLUSIONS**, is amended to add the following new exclusions:

- based upon, directly or indirectly arising out of, in any way involving any **Wrongful Act** of an **Employed Lawyer** occurring at a time when the **Employed Lawyer** was not an employee of an **Insured Entity**;

- based upon, directly or indirectly arising out of, in any way involving any **Wrongful Act** of an **Employed Lawyer** if, as of 11/15/2002, any **Insured** knew or could have reasonably foreseen that such **Wrongful Act** could give rise to a **Claim**;

- based upon, directly or indirectly arising out of, in any way involving discrimination or other unfair employment practices by an **Employed Lawyer**;

- based upon, directly or indirectly arising out of, in any way involving any activities by an **Employed Lawyer** as an officer or director of any corporation (including any **Insured Entity**);

3.      For purposes of the coverage afforded under this endorsement, the **Insured Entity** will be conclusively deemed to have indemnified each **Employed Lawyer** pursuant to law, common or statutory, or contract, or the charter or by-laws of the applicable **Insured Entity**. The **Insured Entity** hereby agrees to indemnify the **Employed Lawyer** to the fullest extent permitted by the law including the making in good faith of any required application for court approval.

4.      Coverage afforded under this endorsement shall apply to a **Claim**, otherwise covered under this Policy, if, and to the extent that the **Employed Lawyer** is named with one or more other **Insureds** covered under this Policy.

5.      Coverage provided by this endorsement is specifically excess over any other valid or collectible insurance, (including but not limited to any legal malpractice insurance or professional errors and omissions insurance) and shall only drop down and be primary insurance in the event of exhaustion of such other insurance due to losses paid thereunder.

GSL11079XX (7-08)                  Policy No:    425252346
Page 1                                Endorsement No:    6
Columbia Casualty Company                  Effective Date:    12/01/2016
Insured Name: State Automobile Mutual Insurance Co
© CNA  All Rights Reserved.



All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____

(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

© CNA  All Rights Reserved.



**STATE AUTO MUTUAL INSURANCE COMPANY**
**ADDITIONAL INSURED ENDORSEMENT**

In consideration of the premium paid for this Policy, it is agreed that Section **II. DEFINITIONS,** the definition of **Professional Services** is deleted in its entirety and replaced with the following:

> **Professional Services** means those services performed by or on behalf of the **Insured Entity** for a policyholder or **client** of **Insured Entity** pursuant to a written contract with such policyholder or **client** for consideration inuring to the benefit of such **Insured**. **Professional Services** do not include services as an insurance producer, except when acting as an in-house agent.

All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.


By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

---

GSL11690XX (12-08)
Page 1
Columbia Casualty Company
Insured Name: State Automobile Mutual Insurance Co

Policy No:  425252346
Endorsement No:  7
Effective Date:  12/01/2016

© CNA  All Rights Reserved.



**ADDITIONAL INSURED EXCLUSION ENDORSEMENT**

In consideration of the premium paid for this Policy, it is agreed that Section **II. DEFINITIONS,** the definition of **Insured** is amended to include the following**:**

> **Insured** shall not mean BroadStreet Capital Partners.

All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

---

GSL11694XX (12-08)                                                                  Policy No:      425252346
Page 1                                                                              Endorsement No:  8
Columbia Casualty Company                                                           Effective Date:  12/01/2016
Insured Name: State Automobile Mutual Insurance Co
© CNA All Rights Reserved.

**CNA**

**AMEND APPLICATION SECTION**
**(ONLY CEO, CFO AND GENERAL COUNSEL CAN IMPUTE KNOWLEDGE TO ENTITY)**

In consideration of the premium paid for this Policy, it is agreed that with regard to the General Terms and Conditions to the Policy, Section **X. APPLICATION**, the last sentence is deleted in its entirety and replaced as follows:

> For purposes of this paragraph, the knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**, and only the knowledge of a the Chief Executive Officer, Chief Financial Officer or General Counsel of the **Insured Entity** shall be imputed to such **Insured Entity**.

All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

---

| | |
|---|---|
| GSL11699XX (12-08) | Policy No: 425252346 |
| Page 1 | Endorsement No: 9 |
| Columbia Casualty Company | Effective Date: 12/01/2016 |
| Insured Name: State Automobile Mutual Insurance Co | |

© CNA All Rights Reserved.



**AMEND DELIBERATE ACTS EXCLUSION**
**AMEND FINAL ADJUDICATION AND SEVERABILITY**

In consideration of the premium paid for this Policy, it is understood and agreed that Section **III. EXCLUSIONS,** 7. **Deliberate Acts**, is deleted in its entirety and replaced with the following:

7.      **Deliberate Acts**

based upon or arising out of the committing of any deliberate fraudulent or deliberate criminal act by the **Insured** if, in a final adjudication proceeding, it is established that such act was committed.

For purposes of determining the applicability of Exclusion 7:

a.      the facts pertaining to and knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**; and

b.      only facts pertaining to and knowledge possessed by any past, present or future chief executive officer, chief financial officer, or general counsel of an **Insured Entity** shall be imputed to the **Insured Entities**.

All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

---

GSL11700XX (12-08)
Page 1
Columbia Casualty Company
Insured Name: State Automobile Mutual Insurance Co

Policy No:     425252346
Endorsement No:   10
Effective Date:   12/01/2016

© CNA  All Rights Reserved.

**CNA**

**AMEND DEFINITION OF APPLICATION**

In consideration of the premium paid for this Policy, it is understood and agreed that the Policy is amended as follows:

Section II. **DEFINITIONS**, the definition of **Application** is deleted in its entirety and replaced with the following:

> **Application** means the most recent filed convention statements to policyholders by State Auto Mutual Insurance Company within the last twelve months.

All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

---

| | |
|---|---|
| GSL12315XX (3-09) | Policy No: 425252346 |
| Page 1 | Endorsement No: 11 |
| Columbia Casualty Company | Effective Date: 12/01/2016 |
| Insured Name: State Automobile Mutual Insurance Co | |

© CNA All Rights Reserved.



**STATE MUTUAL AUTO INSURANCE COMPANY**
**SEMIANNUAL BORDEREAU CLAIMS REPORTING ENDORSEMENT**

In consideration of the premium paid for this Policy, it is agreed that Paragraph 1. **Notice of Claim**, of Section **VI. REPORTING/DATE OF CLAIM/INTERRELATED CLAIM CLAUSE**, is deleted in its entirety and replaced by the following:

1.    **Notice of Claim**

The **Insureds** shall, as a condition precedent to the obligations of the Insurer under this Policy, give written notice to the Insurer of a **Claim** as soon as any **Designated Person** first becomes aware of such **Claim**. Notice is to be provided to the Insurer as follows:

a.    **Significant Claims** are to be reported to the Insurer as soon as practicable, but in no event later than sixty (60) days after the end of the **Policy Period** or the Extended Reporting Period, if applicable; and

b.    All other **Claims** are to be reported to the Insurer in a semi-annual bordereau report provided within fifteen (15) days after the last day of the fifth and the eleventh full calendar months from the inception date of the policy, but in no event later than thirty (60) days after the end of the **Policy Period** or the Extended Reporting Period, if applicable. Such semi-annual bordereau report must contain the following information:
(1)    the name of each claimant;
(2)    the name of the **Insured** against whom the **Claim** is asserted;
(3)    a brief description of the nature of the **Claim** asserted or summary of the factual allegations comprising the **Claim**;
(4)    the claimant's monetary demand and any increases or decreases in the amount of such demand;
(5)    note whether punitive damages are sought;
(6)    the date the **Claim** was first made against the **Insureds**;
(7)    the form of the **Claim** (e.g., written demand, civil lawsuit, administrative or disciplinary proceeding) and the jurisdiction and venue shall be specified;
(8)    the identity of defense counsel (if any); and,
(9)    the current status of the **Claim** (to be updated semi-annually);

If any **Designated Person** becomes aware that a **Claim**, previously reported in the bordereau, has developed into a **Significant Claim**, the **Insureds** shall provide a separate notice of such **Significant Claim** to the Insurer as soon as practicable thereafter, but in no event later than sixty (60) days after the end of the **Policy Period** or the Extended Reporting Period, if applicable.

The Insurer may obtain its own independent evaluation of **Loss** that may result from any **Claim**. In the event the Insurer reasonably determines that **Loss** may exceed $1,000,000, then upon the Insurer's written notice to the **Insured**, the Insurer shall assign a separate claim number to such **Claim**, the **Insured** shall remove such **Claim** from the bordereau report, and the **Insured** shall report to the Insurer separate and apart from any bordereau report all significant developments regarding such **Claim** as they occur.

Any **Claim** that could be reported under the bordereau report that the **Insureds** wish, for whatever reason, to report sooner may be reported to the Insurer by providing a separate notice of such **Claim** as per clause a. above.

As used herein, **Designated Person** means any past, present or future in-house general counsel, chief executive officer or chief financial officer of any **Insured Entity**.

As used herein, **Significant Claims** mean any **Claim** that any **Designated Person** is aware of that:
a.    is being made by more than one individual claimant;
b.    is being made by any individual claimant purporting to represent a putative class of similarly situated claimants;
c.    is being made by any government regulatory agency or department; or

GSL11701XXC (12-08)
Page 1
Columbia Casualty Company
Insured Name: State Automobile Mutual Insurance Co

Policy No:   425252346
Endorsement No:   12
Effective Date:   12/01/2016

© CNA  All Rights Reserved.



d.    contains specific pleadings or responses to discovery regarding alleged damages or other alleged facts sufficient to determine that the total amount of **Loss** may exceed $1,000,000.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

© CNA  All Rights Reserved.



## STATE AUTOMOBILE MUTUAL INSURANCE CO.
## RETENTION AMENDATORY ENDORSEMENT

In consideration of the premium paid for this Policy, it is understood and agreed that the Policy is amended as follows:

1.  Item 7. of the Declarations is deleted in its entirety and replaced with the following:

    *   Retention applicable to each **Class Action Claim**: $5,000,000

    *   Retention applicable to all other **Claims**: $3,000,000

2.  The Section entitled **DEFINITIONS** is amended by the addition of the following new definitions:

    **Class Action** means an action brought by a representative member of a large group of people on behalf of all members of the group.

    **Class Action Claim** means a **Claim** based upon, arising out of or in any way involving a **Class Action**.

3.  The Section entitled **LIMIT OF LIABILITY/RETENTION/COINSURANCE**, the paragraph entitled **Retention** is deleted in its entirety and replaced by the following

    **Retention**

    The Insurer shall only be liable for the amount of **Loss** arising from each **Claim** which is in excess of the following applicable Retention amounts:

    a.  with respect to a **Class Action Claim** the Retention shall be $5,000,000.

    b.  with respect to all other **Claims**, the Retention amount shall be $3,000,000.

    The Retention amount shall apply to **Loss** arising from each **Claim** and from all **Claims** alleging the same **Wrongful Act** or **Interrelated Wrongful Acts**. The Retention shall be uninsured. The Insurer will have no obligation to pay all or any portion of any applicable retention. In the event more than one retention applies to any **Claim**, the maximum total Retention amount applicable to such **Claim** shall be the highest of such applicable Retentions.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.



**SERVICE OF SUIT ENDORSEMENT**

Wherever used in this endorsement Named Insured means the first person or entity named on the declarations page.

In consideration of the premium paid for this Policy, it is agreed that the following provision is added to the Policy:

**SERVICE OF SUIT**

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Insurer hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the below-named as the person to whom the said officer is authorized to mail such process or true copy thereof.

Service of process in such suit shall be made upon:

General Counsel
Columbia Casualty Company
333 S. Wabash Ave.
Chicago, IL 60604

and in any suit instituted against such person upon this policy, the Insurer will abide by the final decision of such court or of any appellate court in the event of an appeal.

The General Counsel is authorized and directed to accept service of process on behalf of the Insurer in any such suit and, upon the request of the Named Insured, to give a written undertaking to the Named Insured that he will enter a general appearance upon the Insurer's behalf in the event such suit shall be instituted.

All other terms and conditions of the Policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

---

© CNA  All Rights Reserved.