## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**COLUMBIA CASUALTY CO.,**

       **Plaintiff and
Counterclaim
Defendant,**

**v.**

**STATE AUTOMOBILE MUTUAL
INSURANCE CO., *et al.,***

       **Defendants and
Counterclaim/Third-
Party Plaintiffs,**

**v.**

**ACE AMERICAN INSURANCE
CO.,**

       **Counterclaim
Plaintiff and Third-
Party Defendant.**

:

:

**Case No. 2:22-cv-00009
Judge Sarah D. Morrison
Magistrate Judge Chelsey M.
Vascura**

## OPINION AND ORDER

This case is a dispute over insurance coverage. State Automobile Mutual

Insurance Company and its subsidiary Rockhill Insurance Company (collectively,

"State Auto") argue that they are entitled to coverage under certain errors and

omissions ("E&O") policies issued by Columbia Casualty Company (the first-layer

insurer) and ACE American Insurance Company (the excess insurer). Now before

the Court are four motions for summary judgment: Columbia's Amended Motion for

Summary Judgment (ECF No. 44), ACE's Motion for Summary Judgment (ECF No.

47), and State Auto's Cross-Motions for Summary Judgment against Columbia and

ACE (ECF Nos. 45, 52). Also before the Court are two motions to strike by Columbia and ACE (ECF Nos. 54, 55).

## I.     FACTUAL BACKGROUND

Even though the parties submitted more than 200 pages of argument, nearly 70 exhibits, and two expert reports, the facts underlying this case are largely undisputed. Unfortunately for State Auto, not only did it mishandle the defense of its insured in a Florida wrongful death lawsuit, it also mishandled its own claims for coverage with Columbia and ACE.

### A.     State Auto's E&O Policies

Columbia issued two claims-made E&O policies to State Auto: (1) a policy for the period of December 1, 2016, to December 1, 2017; and (2) an identical policy for December 1, 2017, to December 1, 2018.[1] (ECF Nos. 8-1, 8-2.) ACE issued two excess layer claims-made policies to State Auto that provided coverage for the same time periods and under largely the same terms and conditions as Columbia's policies. (ECF No. 11-4, PAGEID # 417; ECF No. 52, PAGEID # 2189; ECF No. 58, PAGEID # 2371.) The Court addresses below only the terms of Columbia's policies (hereinafter, "the Policy") because the same law and arguments made by Columbia and State Auto also apply to ACE's coverage dispute with State Auto.

The first paragraph of the Policy provides, in bold and capitalized text:

---

[1] Columbia and ACE both discuss the 2016–2017 policy in their briefings (and also reference a 2015–2016 policy), but according to State Auto, the only policy at issue in this case is the 2017–2018 policy. (*See, e.g.,* ECF No. 59, PAGEID # 2396, n.6.)

> **THIS POLICY APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD. CLAIMS MUST BE REPORTED TO THE COMPANY IN ACCORDANCE WITH SECTION VI. DEFENSE COSTS ARE WITHIN THE LIMITS OF LIABILITY.**

(ECF No. 8-2, PAGEID #: 223.) The Policy goes on to provide that:

> The Insurer shall pay on behalf of the **Insureds** that **Loss** resulting from any **Claim** if such **Claim** is first made against the **Insureds** during the **Policy Period** or the Extended Reporting Period, if applicable, for a **Wrongful Act** in the rendering or failing to render **Professional Services**.

(*Id.* PAGEID # 225 (emphasis in original).[2]) The limit of liability in the Policy was $5 million in excess of an uninsured $5 million retention applicable to all Claims.[3]

(*Id.*, PAGEID # 223, 251.)

**B.    The Florida Lawsuit**

State Auto, through Rockhill, sold a general liability insurance policy with a $1 million per occurrence limit of liability to The Waves of Hialeah, Inc., which operated a motel in Hialeah, Florida. (ECF No. 45-2, *generally*.) On or about April 9, 2016, Yaimi Machado was sexually assaulted and murdered at the motel. (ECF No. 45-1, ¶ 3); *see also Waves of Hialeah, Inc. v. Machado*, 300 So. 3d 739, 741 (Fla. Ct. App. 2020). Two weeks later, Ms. Machado's estate sued Waves for wrongful death. *Waves of Hialeah*, 300 So. 3d at 741. When Waves notified State Auto of the lawsuit

---

[2] As used hereinafter, "Claim" with a capital "C" refers to a Claim as defined in the Policy.

[3] The ACE policies were subject to a $5 million aggregate limit of liability that would attach immediately to the excess of the limits of the Columbia policies and were not subject to any retention. (ECF No. 11-4, PAGEID # 415–16.)

for coverage purposes, State Auto agreed to defend Waves without reservation and retained defense counsel. (ECF No. 45-1, ¶ 3.) Neither State Auto nor Rockhill were parties to the lawsuit.

State Auto accurately describes the circumstances surrounding Ms. Machado's death as "brutal and shocking." (ECF No. 45, PAGEID # 1108.) On August 3, 2016, Ms. Machado's Estate sent a letter to Waves's defense counsel, demanding the full $1 million policy limit to settle its claims (the "2016 Demand Letter"). (ECF No. 45-3, *generally*.) Over the course of 18 pages, the 2016 Demand Letter detailed the Estate's theory of liability against Waves and the facts that it believed it would prove at trial. (*Id.*) The Estate also directed its settlement demand to Rockhill, asserting that Rockhill's failure to tender Waves's policy limit could result in excess exposure to Rockhill. (*Id.*, PAGEID # 1259.) The 2016 Demand Letter stated:

> Upon examining Rockhill Insurance Company's common law and statutory duties under the above-quoted case law and in light of the facts of this case, it quickly becomes evident that a failure to immediately tender your minimal policy limits would be tantamount to bad faith. Further, it is our intention to hold Rockhill Insurance Company, and any other carrier providing coverage accountable for any failure to immediately tender all policy limits.

(*Id.*) The 2016 Demand Letter pointed out that "Florida law recognizes the claimant's right to bring a direct action to recover these damages as a third-party beneficiary of the insurance contract." (*Id.*, PAGEID # 1260.) Nevertheless, State Auto opted not to settle the Florida lawsuit at that time. (ECF No. 45-1, ¶ 4.)

Almost a year later, on July 7, 2017, Ms. Machado's Estate sent another

letter, increasing its settlement demand to $5 million (the "2017 Demand Letter").
(ECF No. 45-4, PAGEID # 1262.) The 2017 Demand Letter again addressed State
Auto's potential bad faith liability for refusing to accept the initial settlement
demand:

## ROCKHILL INSURANCE COMPANY'S
## EXTRA-CONTRACTUAL EXPOSURE SOLIDIFIED

> On August 3, 2016, Plaintiff demanded the $1,000,000 policy limits
> from Rockhill Insurance Company. Repeated attempts to confirm the
> presence of an adjuster with extra-contractual authority at the
> mediation on August 8, 2017 have gone unanswered. Every fact
> question necessary for a reasonable jury to determine that all
> prerequisites to bad faith under [the case law] have been far exceeded.
>
> * * * *
>
> Rockhill Insurance Company squandered the opportunity to protect its
> insured and tender its minimal $1,000,000 for the loss suffered by
> these parents. Our earlier demand was clear. This case should have
> settled for policy limits. Coverage on this case is now unlimited.

(*Id.*, PAGEID # 1263, 1265.) State Auto did not accept this settlement demand.
(ECF No. 45-1, ¶ 6.)

The Estate and Waves proceeded to trial. (ECF No. 45-1, ¶ 7.) On December
1, 2017, a Florida jury awarded $12 million to the Estate. (*Id.*; ECF No. 45-8,
PAGEID # 1298.) Shortly thereafter, the trial court entered judgment for the
amount of the verdict plus interest. (ECF No. 45-8, PAGEID # 1298.)

State Auto determined that it and Waves would appeal the verdict. (ECF No.
45-1, ¶ 8.) Because Waves was financially unable to secure a bond to stay execution
of the judgment pending the appeal, State Auto secured a bond on Waves's behalf—
even though State Auto, by procuring the bond, was "effectively guarantee[ing]

5

payment" thereof.[4] (ECF No. 45-1, ¶¶ 9, 11; *see also* ECF No. 45, PAGEID # 1111–12.) Ultimately, a Florida Court of Appeals denied Waves's appeal, and the Florida Supreme Court declined to review that denial. (ECF No. 45-1, ¶ 10.)

In April 2020, the Estate sought entry of judgment on the appeal bond. (ECF No. 44-15, PAGEID # 1054; ECF No. 53-2, PAGEID # 2250.) The trial court entered a final judgment against Waves in the amount of $13,327,200. (ECF No. 45-10, PAGEID # 1308–09; ECF No. 53-2, PAGEID # 2250.) On May 19, 2020, State Auto paid the full amount of the final judgment to the Estate. (ECF No. 44-21, PAGEID # 1081–82; *see also* ECF No. 53-2, PAGEID # 2249 (trial court docket entry indicating satisfaction of judgment).)

State Auto now acknowledges that its failure to settle the Florida lawsuit before trial was a "miscalculation on its part" and recognizes that "its miscalculation exposed its insured, Waves, to substantial liability in excess of its policy limits." (ECF No. 45, PAGEID # 1111.) Based on its handling of the Florida lawsuit, State Auto believes that it would have "had little or no likelihood of prevailing" if Waves (or the Estate) had pursued a bad faith claim against it. (*Id.*) Rather, State Auto's "bad faith liability was essentially certain when the $12 million Verdict was returned." (*Id.*; *see also* ECF No. 45-1, ¶ 11.)

---

[4] Although State Auto admits that its procurement of the bond meant that it was effectively guaranteeing payment, the parties dispute whether the bond was required for the prosecution of the appeal and whether State Auto's procurement of the bond was an assumption of Waves's liability for the judgment. (*Compare* ECF No. 53, PAGEID # 2208–09, 2211–12, *with* ECF No. 59, PAGEID # 2402–04.)

### C.     State Auto's Communications with Columbia and ACE

On or about December 7, 2017, State Auto provided written notice to Columbia of the verdict and $12 million judgment in the Florida lawsuit, seeking coverage for the portion of the judgment that exceeded the $1 million limit of the Waves policy. (ECF No. 45-1, ¶ 13.) State Auto provided similar notice to ACE a few days later. (ECF No. 18, PAGEID # 485; ECF No. 19, PAGEID # 498.) State Auto also sent Columbia various materials related to the Florida lawsuit—including the 2016 Demand Letter—and advised Columbia that it had retained bad faith counsel to review the situation.[5] (ECF No. 45-1, ¶ 14; ECF No. 44-11, PAGEID # 979.) State Auto admits that it did not provide Columbia with the 2017 Demand Letter until July 2020 but argues that the information contained in the 2017 Demand Letter is substantially the same as the information that it did provide to Columbia in December 2017.[6] (ECF No. 44-23, PAGEID # 1091; ECF No. 45, PAGEID # 1113–14; ECF No. 45-1, ¶¶ 15–17.) Columbia's claim notes indicate that it was in fact aware of the Estate's $5 million settlement demand as of December 2017. (ECF No. 44-9, PAGEID # 956, 968.)

On January 16, 2018, Columbia informed State Auto that it would be treating the notice from State Auto as a "Notice of Circumstance" under the Policy

---

[5] The record is unclear as to whether State Auto also provided these materials to ACE. (*Compare* ECF No. 11, PAGEID # 365, *with* ECF No. 18, PAGEID # 475–76.)

[6] ACE asserts that State Auto never provided it with copies of either the August 2016 or the July 2017 Demand Letters. (ECF No. 47, PAGEID # 2132, 2135.)

as opposed to a "Claim," stating:

> Based on the information provided, it does not appear that a Claim has
> been made against State Auto. Rather, State Auto has provided notice
> of an adverse verdict against its insured … In the event that a Claim is
> made, please notify us immediately, and Columbia will provide you
> with its coverage position.
>
> * * * *
>
> Columbia will treat State Auto's notification as notice of a Wrongful
> Act that could give rise to a future Claim. In the event a Claim is made
> in the future, such Claim will be deemed to have been made as of the
> date of your notice to Columbia of the potential Claim.

(ECF No. 44-12, PAGEID # 982.) On March 9, 2018, ACE adopted the same

coverage position as Columbia, treating the December 2017 notice from State Auto

as a Notice of Circumstance. (ECF No. 47-4, PAGEID # 2151.)

After Columbia's January 16 letter, there were no communications between it

and State Auto until May 11, 2018, when State Auto updated Columbia on the

status of the appeal. (ECF No. 44-9, PAGEID # 954.) State Auto admits that it "did

not immediately dispute Columbia's [or ACE's] characterization of the Coverage

Claim as a notice of circumstances rather than a triggering 'Claim.'" (ECF No. 45,

PAGEID # 1115 n.1.)

Over the next two years, State Auto, Columbia, and ACE continued to

communicate about the Florida lawsuit. (ECF No. 44-9, PAGEID # 944–55; ECF No.

47-5, PAGEID # 2154.) Columbia and ACE maintain that State Auto repeatedly

affirmed during this time that Waves had yet to assert a bad faith claim against it

and never informed Columbia or ACE of any such claims. (ECF No. 44, PAGEID

# 858; ECF No. 44-9, PAGEID # 944–55; *see also* ECF No. 44-13, 29:2-10 ("I recall

8

asking [State Auto] if the motel, the insured under the State Auto policy, had made any allegations of bad faith against State Auto, and [State Auto] confirmed that they had not."); ECF No. 47, PAGEID # 2133 (citing April 2018 email from ACE to State Auto).) State Auto disputes this and argues that the 2016 and 2017 Demand Letters alleged that State Auto would be acting in bad faith if an excess-of-limits verdict was rendered against Waves after State Auto failed to settle the lawsuit. (ECF No. 45, PAGEID # 1130–35.)

On June 4, 2020, Columbia denied coverage for any claim related to the lawsuit. (ECF No. 45-16, *generally*.) Columbia determined that "the Insuring Agreement of the Policy [was not] triggered" because "there [was] no Claim for a Wrongful Act in the rendering or failing to render Professional Services." (*Id.*, PAGEID # 1700.) ACE subsequently denied coverage on June 8, 2020, adopting Columbia's coverage determination. (ECF No. 47-9, PAGEID # 2162.)

## II.  PROCEDURAL HISTORY

State Auto "vigorously disputed" Columbia and ACE's coverage denials. (ECF No. 45, PAGEID # 1115.) When the parties' efforts to resolve the dispute were unsuccessful, Columbia filed this action, seeking a declaratory judgment that State Auto is not entitled to coverage. (ECF No. 8.) State Auto responded and filed a counterclaim against Columbia and a third-party complaint against ACE,[7] alleging

---

[7] State Auto labels its pleading against ACE as a crossclaim, but it is really a third-party complaint because ACE was not a defendant at the time State Auto asserted claims against it. A crossclaim is a claim asserted by one defendant against another defendant, while a third-party complaint is a complaint filed by a defendant against a new third party. *See* Fed. R. Civ. P. 13, 14(a)(1).

claims for breach of contract and bad faith and seeking a declaratory judgment that it is entitled to coverage under both the Columbia and ACE policies. (ECF No. 11.) ACE then filed a counterclaim against State Auto, requesting a declaratory judgment that State Auto is not entitled to coverage under the ACE policy. (ECF No. 18.)

The parties now move for summary judgment on all claims. In addition, Columbia and ACE move to strike the report of State Auto's expert discussing Florida's bad faith laws in its entirety or, in the alternative, the conclusions of law contained therein (as well as the conclusions of law contained in the report of State Auto's other expert, James P. Schratz). (ECF Nos. 54, 55.)

## III.     MOTIONS FOR SUMMARY JUDGMENT

### A.      Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed

in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

## B. Choice of Law

State Auto argues that Florida law applies to this dispute, while Columbia and ACE argue that the Court should apply Ohio law. (ECF No. 44, PAGEID # 862–63; ECF No. 45, PAGEID # 1122–23; ECF No. 47, PAGEID # 2136.) The Policy does not contain a choice of law provision. (ECF No. 8-2, *generally*.)

In a diversity action, the forum state's choice-of-law rules determine which state's substantive law will apply to the dispute. *Miller v. State Farm Mut. Auto. Ins. Co.*, 87 F.3d 822, 824 (6th Cir. 1996). Ohio requires the presence of a conflict before a court should engage in any choice of law analysis. *McCruter v. Travelers Home & Marine Ins. Co.*, 168 N.E.3d 1, 11 (Ohio Ct. App. 2021) (citing *Akro-Plastics v. Drake Indus.*, 685 N.E.2d 246, 248 (Ohio Ct. App. 1996)); *see also Cohen v. Allegiance Administrators, LLC*, No. 2:20-CV-3411, 2023 WL 7697008, at *3 (S.D.

Ohio Nov. 15, 2023) (Graham, J.) (applying Ohio law). "If the two states would use the same rule of law or would otherwise reach the same result, it is unnecessary to make a choice of law determination because there is no conflict of law." *Mecanique C.N.C., Inc. v. Durr Envtl., Inc.*, 304 F. Supp. 2d 971, 975 (S.D. Ohio 2004) (Marbley, J.). Where there is no conflict, local law governs. *Id.*

As the party seeking application of the law of a foreign jurisdiction, State Auto bears the burden of establishing a conflict between the laws of Florida and Ohio. *Mecanique*, 304 F. Supp. 2d at 975. In its briefing, State Auto discusses at great length the choice of law analysis. (ECF No. 45, PAGEID # 1122.) But it never identifies any conflict between Ohio and Florida law. (*Id.*) Further, this Court's research has disclosed that Ohio and Florida would apply like-principles of insurance law, such that the outcome of this case would be the same regardless of which state's law is applied.[8] Accordingly, the Court will apply Ohio law.

### C.    Coverage under the Policy

The Court begins its analysis with a review of the rules of insurance policy interpretation. Under Ohio law, insurance contracts are construed like any other written contract. *Scott v. Allstate Indem. Co.*, 417 F. Supp. 2d 929, 932 (N.D. Ohio 2006). When interpreting a contract, the Court's role "is to ascertain and give effect to the intent of the parties." *Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997) (citation omitted).

---

[8] State Auto seemingly confirms this by citing to both Florida and Ohio law in its briefing. (ECF No. 45, PAGEID # 1123.)

Courts presume that the parties' intent rests within the language of the contract. *Id.* "If the terms of a policy are clear and unambiguous, a court must enforce the contract as written, giving words used in the contract their plain and ordinary meaning." *Scott*, 417 F. Supp. 2d at 933; *see also Allied World Surplus Lines Ins. Co. v. Richard Goettle, Inc.*, No. 20-3339, 2020 WL 8994338, at *2 (6th Cir. Nov. 5, 2020) (emphasis omitted) (quoting *Dealers Dairy Prods. Co. v. Royal Ins. Co.*, 164 N.E.2d 745, 747 (Ohio 1960)) ("An insurance contract … 'is to be given a reasonable construction in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed.'").

A contract will only require further analysis "if the applicable language is ambiguous—that is, open to more than one interpretation." *Scott*, 417 F. Supp. 2d at 932; *see also Covington v. Lucia*, 784 N.E.2d 186, 190 (Ohio Ct. App. 2003) ("Contractual language is 'ambiguous' only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations."). "[T]he interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (applying Ohio law).

The insured has the burden of demonstrating that its insurance policy covers its claim. *Computer Programming Unlimited, Inc. v. Hartford Cas. Ins. Co.*, No. 3:21 CV 2350, 2022 WL 18135188, at *1 (N.D. Ohio Oct. 26, 2022) (citing *Chicago Title Ins. Co. v. Huntington Nat'l. Bank*, 719 N.E.2d 955, 959 (Ohio 1999)). To do so,

"[t]he insured must show facts sufficient to prove that its loss was within the description of the policy." *Sterling Merchandise Co. v. Hartford Ins. Co.*, 506 N.E.2d 1192, 1198 (Ohio Ct. App. 1986).

Here, the Policy is not ambiguous, and none of the parties argue otherwise. Thus, the threshold question before the Court is whether the Policy covers State Auto's payment of the judgment in the Florida lawsuit—in other words, the Court must determine whether State Auto incurred a "Loss" stemming from a "Claim" that the Policy would obligate Columbia and ACE to cover. Because the Court answers this question in the negative, Columbia and ACE are entitled to summary judgment.

### State Auto has not suffered a "Loss" resulting from a "Claim" against it.

The Policy provides that Columbia and ACE "shall pay on behalf of [State Auto] that **Loss** resulting from any **Claim** if such **Claim** is first made against [State Auto] during the Policy Period or the Extended Reporting Period, if applicable, for a **Wrongful Act** in the rendering or failing to render **Professional Services**." (ECF No. 8-2, PAGEID # 225 (emphasis in original).) In plainer English, coverage under the Policy has several prerequisites, including that there be a "Loss" by State Auto resulting from a "Claim" for a "Wrongful Act." State Auto has not met its burden to show that it experienced a covered "Loss" resulting from a "Claim" as those terms are defined in the Policy. Consequently, the Court need not address the parties' arguments concerning the other requirements for coverage.

As defined in the Policy, a "Claim" is:

14

1.     a written demand for monetary damages or non-monetary relief;
2.     a civil proceeding in a court of law or equity or arbitration; or
3.     a formal administrative or regulatory proceeding, against an **Insured**, including any appeal therefrom.

(ECF No. 8-2, PAGEID # 241 (emphasis in original).) In turn, a "Loss" is:

> [D]amages, settlements, judgments (including any award of pre-judgment and post-judgment interest on a covered judgment) and **Defense Costs** for which the **Insured** is legally obligated to pay on account of a covered **Claim**.

(*Id.*, PAGEID # 226 (emphasis in original).)

### 1.     No "Claim" Against State Auto

State Auto argues that the 2017 Demand Letter was the coverage-triggering "Claim" due to its inclusion of bad faith allegations. (ECF No. 45, PAGEID # 1130.) However, the parties agree that the 2017 Demand Letter was not a "Claim" against State Auto at the time State Auto received it. (*Id.*, PAGEID # 1140; ECF No. 53, PAGEID # 2223.) State Auto instead contends that the 2017 Demand Letter was a "conditional claim" that ripened into an actual "Claim" upon the rendering of the excess-of-limits verdict and judgment in December 2017. (ECF No. 45, PAGEID # 1129–30, 1139–40; *see also id.*, PAGEID # 1135 ("[T]here was no 'Claim' to report to Columbia until the condition in the letter occurred upon the rendering of the Verdict and Judgment.").) This argument ignores the fact that the settlement offer within the 2017 Demand Letter expired on August 8, 2017. (ECF No. 45-4, PAGEID # 1262.) Because the written demand expired by its own terms before the continency was met, it could not subsequently ripen into a "Claim."

Moreover, and perhaps more importantly, to the extent the 2017 Demand

Letter constitutes a "written demand for monetary damages" as State Auto asserts, the $5 million demand was made to settle the "claims the Estate has against The Waves," not any claims the Estate may have had against State Auto. (ECF No. 45-4, PAGEID # 1262.) The Policy only covers "Claim[s] … first made against [State Auto] … for a **Wrongful Act** in the rendering or failing to render **Professional Services**." (ECF No. 8-2, PAGEID # 225 (emphasis in original).) Here, though the 2017 Demand Letter could be interpreted as *threatening* a bad faith action against State Auto, it does not affirmatively assert such an action (civil, administrative, or regulatory), nor does it demand monetary damages or non-monetary relief from State Auto *stemming from* its potential bad faith exposure. An allegation that "a wrongful act has occurred is not the same thing as a claim for payment on account of a wrongful act" committed by State Auto. *MGIC Indem. Corp. v. Home State Sav. Ass'n*, 797 F.2d 285, 288 (6th Cir. 1986). The 2017 Demand Letter simply does not fall within the Policy's definition of a "Claim."

Similarly, the verdict and judgment in the Florida lawsuit addressed only Waves's liability, not State Auto's liability. (ECF No. 45-8, PAGEID # 1298.) The Policy explicitly limits coverage to "Claims … made against the **Insureds**." (ECF No. 8-2, PAGEID # 225 (emphasis in original).) State Auto was not a party to the Florida lawsuit, and the judgment in that case was entered solely against Waves. (ECF No. 45-8, PAGEID # 1298); *see also Waves of Hialeah*, 300 So. 3d at 742 ("Machado filed the instant wrongful death action against The Waves alleging premises liability, more specifically, negligent security. . . The jury ultimately

16

returned a verdict for the plaintiffs in the amount of $12,000,000.00, finding The Waves wholly at fault."). Although the judgment may have triggered "an actionable liability [against State Auto] for bad faith under Florida law" (as State Auto asserts), there is no evidence that the Estate or Waves made any threats of litigation or demands *against* State Auto founded on bad faith liability after the judgment was entered. (ECF No. 45, PAGEID # 1134.)

In other words, there has been no adjudication of State Auto's bad faith liability. Neither the 2017 Demand Letter nor the judgment against Waves was a demand for relief against State Auto resulting from any "Wrongful Act" by State Auto in rendering "Professional Services" to Waves. Even though State Auto now falls on its sword and admits that it had "very little or no likelihood of prevailing in any bad faith claim," State Auto's legal liability was and remains merely speculative.[9] (*Id.*, PAGEID # 1148.) As such, the verdict and judgment did not magically transform the 2017 Demand Letter into a "Claim" but rather merely could have (but did not) given rise to a "Claim."

### 2. No "Loss" Suffered by State Auto

Columbia and ACE argue that State Auto did not incur a Loss as defined by the Policy because State Auto was "not 'legally obligated to pay [anything] on

---

[9] The speculative nature of State Auto's liability is clear from its own choice of words throughout its briefing. For example, State Auto calls its bad faith liability "*essentially* certain" and "*likely*, if not imminent." (ECF No. 45, PAGEID # 1111, 1117 (emphasis added).) It also refers to its "*concern*[] that Waves and/or the Machado Estate *would* pursue a lawsuit for bad faith against State Auto." (ECF No. 62, PAGEID # 2619 (emphasis added).) Notably, the record reflects that no such lawsuit was ever filed.

account of a covered Claim.'" (ECF No. 44, PAGEID # 874 (quoting ECF No. 8-2, PAGEID # 226).) In response, State Auto contends that "its liability to pay the amount of the [Florida lawsuit] Judgment in excess of the $1 million limit of the Waves GL Policy arose from its bad faith liability to Waves and/or the Estate." (ECF No. 45, PAGEID # 1149.) Explaining further, State Auto asserts that, after the Florida lawsuit verdict, a bad faith claim against it was "likely, if not imminent," and, if such a claim had been filed, its liability "was essentially certain." (ECF No. 45, PAGEID # 1111, 1117.) This argument ignores the Policy requirement that State Auto must incur "damages, settlements, judgments … [and/or] Defense Costs" that it is "legally obligated to pay" to obtain coverage. (ECF No. 8-2, PAGEID # 226 (emphasis omitted).)

The Policy does not define the phrase "legally obligated," so the Court must give that term its ordinary and commonly accepted meaning. *Scott*, 417 F. Supp. 2d at 933. The phrase "legal obligation" connotes something one is bound to do as a matter of law, and it carries with it a recognition that the law will enforce the obligation to the benefit of the individuals to whom this obligation is owed. *See, e.g.*, *Telxon Corp. v. Fed. Ins. Co.*, 309 F.3d 386, 390 (6th Cir. 2002) (applying Ohio law) (affirming lower court's finding that the phrase "'[l]egally obligated to pay' means simply what it says, that the insurance policy only covers defense costs that the insured person has a legal obligation to pay, not a desire to pay or even a moral obligation to pay"); *see also Detroit Water Team Joint Venture v. Agricultural Ins. Co.*, 371 F.3d 336, 339 (6th Cir. 2004) (discussing "legally obligated" under Michigan

law as requiring "more than inchoate or potential liability") (citations omitted); 7A
Couch on Insurance § 103:14 ("The term 'legal liability,' as used in a policy of
insurance, means a liability such as a court of competent jurisdiction will recognize
and enforce between parties litigant."). Defining "legally obligated" in this manner
is consistent with Ohio law, which provides that "an insurer's duty to indemnify its
insureds is based on whether there is, in fact, actual liability." *Hoyle v. DTJ Ents.,
Inc.*, 36 N.E.3d 122, 125 (Ohio 2015); *see also Cincinnati Ins. Co. v. Gaines
Reporting Serv.*, No. L-91-290, 1992 WL 139924, at *2 (Ohio Ct. App. June 19, 1992)
(citations omitted) ("When an insurance company pays a claim it is not legally
obligated to pay, it makes the payment as a volunteer.").

Here, State Auto was not legally obligated to pay any damages, settlements,
judgments, or defense costs on account of a covered "Claim." State Auto contends
that its obligation to do so stems not from its agreement to guarantee payment of
the appeal bond but rather from "its bad faith liability to Waves and/or the Estate."
(ECF No. 45, PAGEID # 1149.) This contention is fatal to its argument. No "Claim"
was made against State Auto. The judgment in the Florida lawsuit was against
Waves only. State Auto's "bad faith liability to Waves and/or the Estate" was never
determined. (*Id.*, PAGEID # 1147.) No legal obligations could arise from
undetermined liability.

Trying to avoid the Policy requirements for coverage, State Auto argues that
Columbia and ACE have waived any argument regarding whether there was a

"Loss" under the Policy.[10] This argument fails for multiple reasons. First, the Court has concluded that State Auto has failed to demonstrate that it had a "Claim" under the Policy—an issue that Columbia and ACE indisputably did not waive. Further, under Ohio law, "[i]t is axiomatic that an insurance company is under no obligation to its insured, or to others harmed by the actions of an insured, unless the conduct alleged of the insured falls within the coverage of the policy." *Gearing v. Nationwide Ins. Co.*, 665 N.E.2d 1115, 1117 (Ohio 1996). As discussed above, "[t]he insured must show facts sufficient to prove that its loss was within the description of the policy." *Sterling Merchandise Co. v. Hartford Ins. Co.*, 506 N.E.2d 1192, 1198 (Ohio Ct. App. 1986). Thus, Ohio law requires that State Auto demonstrate that it suffered a "Loss" covered by the Policy. Neither Columbia nor ACE waived State Auto's burden of proof under Ohio law.

This is particularly so considering that the doctrine of waiver may not be used to expand the coverage provided in an insurance policy. *Lubrizol Corp. v. Nat'l Union Fire Ins. Co.*, 200 F. App'x. 555, 563–64 (6th Cir. 2006) (citing *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 597 N.E.2d 1096, 1103–04 (Ohio 1992)). Rather, "[w]aiver … should apply only in those cases where (1) there is a clear misrepresentation of fact or (2) when the insurer provides a defense without

---

[10] State Auto also repeatedly insists that Columbia and ACE's own bad faith in failing to conduct a factual investigation precludes them from raising certain Policy requirements, conditions, and exemptions. However, those arguments relate only to Columbia and ACE's defenses with respect to late notice, notice of claim, the appeal bond, and the "no action" provision—issues that the Court does not need to address to resolve the coverage issue. (ECF No. 45, PAGEID # 1124, 1129, 1137, 1145.)

reserving its rights for a period sufficient to prejudice the insured's ability to conduct its own defense." *Turner Liquidating v. St. Paul Surplus Lines Ins. Co.*, 93 Ohio App.3d 292, 638 N.E.2d 174, 179 (1994). Neither of these situations are present here. Waiver is inapplicable and does not preclude summary judgment in favor of Columbia and ACE.

Accordingly, under the undisputed facts, State Auto has failed to demonstrate either that the Policy covers its "Claim" or that its payment to the Estate was a "Loss" under the Policy. Columbia and ACE's Motions for Summary Judgment are therefore **GRANTED,** and State Auto's Cross-Motions for Summary Judgment are **DENIED**.

### D. State Auto's Bad Faith Claims Against Columbia and ACE

Neither Columbia nor ACE's motions for summary judgment expressly address State Auto's counts of bad faith against them. "To successfully assert a bad-faith claim, the insured must show that the insurer failed to exercise good faith in processing a claim by refusing to pay or to defend the claim, when not based upon circumstances that furnish reasonable justification therefor." *Wright State Physicians, Inc. v. Doctors Co.*, 78 N.E.3d 284, 290 (Ohio Ct. App. 2016) (internal quotation marks and citations omitted). Because the Court hereby grants summary judgment to Columbia and ACE on their declaratory judgment claims and State Auto's claims for breach of contract, it appears to the Court that State Auto's bad faith claim necessarily fails as well. *See Gehrisch v. Chubb Grp. of Ins. Cos.*, 645 F. App'x. 488, 494 (6th Cir. 2016) (noting that, if an insured's breach of contract claim

fails, so does its bad faith claim).

Because this issue was not briefed by the parties, the Court hereby orders State Auto to show cause within **ten (10) days** of the date of this Order why judgment on its bad faith counts should not be entered in favor of Columbia and ACE. To be clear, this is not invitation to re-argue the underlying issues—the only issue that State Auto should address is whether the Court's ruling on the contract issues dooms State Auto's bad faith causes of action.

## IV.   MOTIONS TO STRIKE OR EXCLUDE

Columbia and ACE both filed Motions to Strike or Exclude State Auto's Expert Reports. (ECF Nos. 54, 55.) Considering the Court's ruling on the summary judgment motions above, which does not require reference to State Auto's expert reports, both motions are **DENIED** as moot.[11]

## V.   CONCLUSION

For the reasons set forth above, Columbia's Amended Motion for Summary Judgment (ECF No. 44) and ACE's Motion for Summary Judgment (ECF No. 47) are **GRANTED**, and State Auto's Cross-Motions for Summary Judgment (ECF Nos. 45, 52) are **DENIED**.

State Auto shall **SHOW CAUSE** within **ten (10) days** of the date of this Order why summary judgment should not be entered against it on its bad faith causes of action.

---

[11] Columbia also moved within its summary judgment briefing to strike certain portions of the declaration of State Auto representative Jay Carleton. (ECF No. 53, PAGEID # 2208–09.) The Court did not rely on the objectionable portions, so it need not address this request.

**IT IS SO ORDERED.**

s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**